[Cite as *State v. Neanover*, 2021-Ohio-540.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-06-066 |
| | : | O P I N I O N |
| - vs - | | 3/1/2021 |
| | : | |
| DAVID NEANOVER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case Nos. CRB 1900606 A, B, C


Michael T. Gmoser, Butler County Prosecuting Attorney, Stephen M. Wagner, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Rittgers & Rittgers, Attorneys at Law, Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for appellant


**HENDRICKSON, J.**

{¶1} Appellant, David Neanover, appeals from a decision of the Butler County Area I Court denying his motion to suppress evidence. For the reasons discussed below, we affirm the trial court's ruling.

{¶2} On April 22, 2019 around 10:00 a.m., Butler County Deputy Dog Warden, Abigail Forkner, travelled to appellant's residence to perform a welfare check on a dog. She

had received a report alleging that a "skinny" dog with sores on its body was tied up on a short chain at the residence. Upon her arrival, the deputy pulled into the driveway of the house and parked her vehicle. At the end of the driveway was a wooden fence built along the perimeter of the backyard. The house was off to the left side of the driveway. The deputy exited her vehicle, walked up to the front door of the residence, and knocked on the door but received no response.

{¶3} The deputy returned to her vehicle. Standing next to her vehicle, she turned toward the fenced yard. From her position in the driveway, around two feet away from the fence, the deputy was able to see into the backyard through a missing section of the fence. The upper half of one of the fence boards was gone. This created a conspicuous hole in the fencing through which she could easily see a dog on the backyard patio. From the fence to the dog was a distance of around 15 feet. The dog appeared to be emaciated, covered in skin sores all over its body, and tied to a short chain. The deputy explained that the dog had very little body fat and its ribs were clearly visible under the skin. The deputy noticed there was a water bowl near the dog, but she could not determine if there was water in it. The deputy observed a little doghouse on the patio and she noticed that there was trash and debris strewn across the patio and yard.

{¶4} The deputy had previously seen this dog in December 2018. In comparison, the dog's health appeared much worse in April 2019. The deputy decided to photograph the dog to show her supervisor the dog's condition. The deputy had to leave the residence and drive to a nearby fire station a little way down the road for her cellular telephone to receive service. She called appellant, but he did not answer.

{¶5} The deputy then sent the photographs of the dog to her supervisor. After receiving the photographs, the deputy's supervisor requested that she seize the dog. The deputy then returned to the residence and reapproached the front door to again try to

contact appellant or a resident. When she received no response, the deputy opened the fence's gate to enter the backyard and retrieve the dog. The deputy was concerned that the dog needed immediate medical treatment because it had moved very little, did not bark at her, appeared malnourished, displayed some open wounds, had no food or water, and seemed lethargic. She took possession of the dog and brought it to the local dog shelter to be examined by a veterinarian.

{¶6} Based on the foregoing, the deputy filed a criminal complaint and citation charging appellant with three offenses: causing serious harm to a companion animal, a fifth-degree felony in violation of R.C. 959.131(C) and 959.99(E)(2); cruelty to a companion animal, a first-degree misdemeanor in violation of R.C. 959.131(B) and 959.99(E)(1); and failure to register a dog, a minor misdemeanor in violation of R.C. 955.21 and 955.99(E)(1). The matter was bound over to the grand jury which indicted appellant on three misdemeanor offenses: cruelty to a companion animal, a first-degree misdemeanor in violation of R.C. 959.131(B) and 959.99(E)(1); cruelty to a companion animal, a second-degree misdemeanor in violation of R.C. 959.131(D)(2) and 959.99(E)(3); and failure to register a dog, a minor misdemeanor in violation of R.C. 955.21 and 955.99(E)(1). The matter was transferred back to the county court.

{¶7} After the charges were transferred, appellant moved to suppress the evidence. The trial court held a hearing on the motion and, at the hearing, the state called one witness, the deputy, to testify and presented six exhibits with multiple photographs in each exhibit. The trial court denied appellant's motion to suppress.

{¶8} Subsequently, appellant entered a no contest plea to both of the cruelty to companion animal offenses. For the first-degree misdemeanor offense, the trial court sentenced appellant to serve 180 days in jail, pay a $1,000 fine, pay restitution in the amount of $2,598.18, and pay court costs. For the second-degree misdemeanor offense,

the trial court sentenced appellant to serve 90 days in jail, pay a $500 fine, and pay court costs. The trial court suspended the $1,000 fine and ordered the jail terms to run concurrently.

{¶9} Appellant now appeals. He raises one assignment of error for review:

{¶10} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION WHEN IT DENIED HIS MOTION TO SUPPRESS.

{¶11} In his sole assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Appellant contends that the area where the deputy observed the dog was within the curtilage of his residence. By peering through a gap in the fence and subsequently seizing the dog without a warrant, the deputy violated appellant's rights against unreasonable searches and seizures pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

{¶12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Sexton,* 12th Dist. Butler No. CA2019-08-133, 2020-Ohio-4179, ¶ 22. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence because the trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Jackson*, 12th Dist. Madison No. CA2019-03-006, 2020-Ohio-2677, ¶ 16, citing *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, ¶ 8. An appellate court will independently determine, without deference to the trial court's conclusions, whether the facts satisfy the appropriate legal standard. *State v. Miller*, 12th Dist. Warren No. CA2020-01-003, 2021-Ohio-277, ¶ 13.

{¶13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect an individual from unreasonable searches and seizures

by the government. *State v. Grant*, 12th Dist. Preble No. CA2014-12-014, 2015-Ohio-2464, ¶ 13. The Ohio Supreme Court has interpreted the Ohio Constitution to provide the same amount of protection as the federal constitution. *See State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 11; *State v. Robinette*, 80 Ohio St.3d 234, 238-239 (1997) (explaining that the language used in both constitutional provisions is virtually identical, therefore, the Court should harmonize its interpretation of the two constitutions). For the Fourth Amendment protection to apply, the defendant must demonstrate that he has an expectation of privacy in the place to be searched and that the expectation of privacy is reasonable. *State v. Martin*, 12th Dist. Warren No. CA2018-09-105, 2019-Ohio-2792, ¶ 15, citing *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469 (1998).

{¶14} "Curtilage" is the area immediately surrounding the home that falls under the umbrella of the home's Fourth Amendment protection because it harbors the intimate activities associated with the privacies of life. *State v. Williamson*, 12th Dist. Butler No. CA2003-02-047, 2004-Ohio-2209, ¶ 16; *State v. Adkins*, 12th Dist. Butler Nos. CA2014-02-036 and CA2014-06-141, 2015-Ohio-1698, ¶ 25. While there is a reasonable expectation of privacy in one's curtilage, that does not end the analysis. The United States Supreme Court has explained,

> [t]hat the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.

*California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809 (1986). Privacy must be protected by the individual, so if a law enforcement officer is lawfully on a person's property and observes objects in open view, no warrant is required to look at it. *State v. Buzzard*, 112

Ohio St.3d 451, 2007-Ohio-373, ¶ 16. The observation of an object in open view does not constitute a search under the Fourth Amendment. *Id.* at ¶ 15; *See also State v. Scoggins*, 4th Dist. Scioto No. 16CA3767, 2017-Ohio-8989, ¶ 16 (under the "open view" doctrine, where an officer views an object voluntarily exposed to public view there is no reasonable expectation of privacy).

{¶15} Here, the deputy testified at the suppression hearing that she drove her vehicle into appellant's driveway and up near the fence line. She then exited the vehicle to approach the front door in an attempt to speak with appellant or another resident about the dog. Appellant's argument that the deputy violated his Fourth Amendment rights by her physical intrusion onto his property is not well taken because a law enforcement officer may enter a person's property in the areas impliedly open to the public in the same manner that any other person may enter the property, such as to "knock and talk" with the resident. *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 31; *State v. Helmbright*, 10th Dist. Franklin Nos. 11AP-1080 and 11AP-1081, 2013-Ohio-1143, ¶ 15; *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 36. This includes areas such as the driveway and access routes to the front door of the residence. *Helmbright* at ¶ 15, citing *State v. Birdsall*, 6th Dist. Williams No. WM-09-016, 2010-Ohio-2382, ¶ 13; *State v. Parsons*, 3rd Dist. Henry No. 7-16-08, 2017-Ohio-1315, ¶ 23. The deputy was in a place she was legally allowed to be when she parked in the driveway and walked to the front door of the house to speak with someone about the dog. There is nothing in the record that suggests the deputy's actions exceeded the scope of the implied permission.

{¶16} From the driveway, the deputy validly observed the dog in a manner that any other member of the public could have done. After walking back to her vehicle, the deputy testified that she turned to look at the backyard. Because the fence was missing a section of board, she could clearly see into the backyard and observe the subject dog. The deputy

testified that she did not manipulate the fence or take any other action to assist in her ability to look through the gap in the fence. It was constitutionally permissible for the deputy to look through the "fortuitous aperture" in the fence. *Buzzard*, 2007-Ohio-373 at ¶ 1, 18-19 (holding that an individual's Fourth Amendment rights were not violated when a law enforcement officer peered through a small, one-quarter inch opening between the double doors of a garage to identify stolen property). Based on this clear gap in the fencing, the dog was in open view to the deputy. Consequently, the deputy did not conduct a "search" within the meaning of the Fourth Amendment when she looked through the hole in the fence and, thus, did not violate appellant's Fourth Amendment rights.

{¶17} To the limited extent that appellant argues the warrantless seizure of the dog violated his Fourth Amendment rights, that argument also lacks merit. We recognize that even if an object is in open view, its "seizure cannot be justified if it is effectuated 'by unlawful trespass.'" *Collins v. Virginia*, ___U.S.___, 138 S.Ct. 1663, 1672 (2018). The warrantless seizure must be justified by one of the established exceptions to the Fourth Amendment's warrant requirement. *State v. Braxton*, 12th Dist. Warren No. CA2019-03-019, 2020-Ohio-424, ¶ 14.

{¶18} One such exception to the warrant requirement is exigent circumstances that require emergency aid. *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849 (2011). The emergency-aid exception allows law enforcement officers to make a warrantless entry into a home or curtilage to render aid if they reasonably believe there is the immediate need for assistance to protect life or prevent serious injury. *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, ¶ 20-22; *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943 (2006) (the exigent need to assist persons who are seriously injured or threatened with such injury obviates the warrant requirement). The emergency aid exception applies where there is an objectively reasonable basis for believing that the subject is in need of immediate aid.

*Brigham City* at 406. Ohio courts have extended the exigent circumstances exception to situations involving animal welfare. *State v. Kilburn*, 12th Dist. Warren Nos. CA96-12-130 and CA96-12-131, 1998 Ohio App. Lexis 1200, *7, 10 (Mar. 30, 1998); *State v. Glowney*, 2d Dist. Montgomery Nos. 27896 and 27897, 2019-Ohio-3390, ¶ 38 (warrantless seizure of stray dog was justified for the safety of the public and dog); *State v. Powell*, 2d Dist. Montgomery No. 27580, 2017-Ohio-8669, ¶ 30; *see also United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 490 (6th Cir.2014) (warrantless seizure of animals did not violate Fourth Amendment because an imminent danger to the animals' health existed). The exigent circumstances exception justifies warrantless seizures. *See State v. Pettiford*, 12th Dist. Fayette No. CA2017-05-010, 2018-Ohio-1015, ¶ 15; *State v. Vondenhuevel*, 3d Dist. Logan No. 8-04-15, 2004-Ohio-5348, ¶ 16.

{¶19} In this case, the deputy testified that the dog was in need of immediate medical attention. The dog had lesions on its head and all over its body, it was so underweight and malnourished that the rib cage was easily seen under the skin, and it appeared the dog had no food or water available to it. While the deputy acknowledged that she did not see any mortal wounds or think that the dog's death was imminent, she nevertheless believed that the dog's poor health required an immediate response to alleviate the dog's suffering and protect its life. She seized the dog and brought it to the animal shelter to provide the necessary veterinary care and sustenance. The evidence at the hearing demonstrated that it was objectively reasonable for the deputy to determine that the dog needed emergency aid. A law enforcement officer does not need "iron-clad" proof of a serious, life threatening injury to determine, on the spot, that emergency aid is required, and it is not proper for a court to supplant the circumstances appearing at the moment with facts learned in hindsight. *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S.Ct. 546 (2009). Based on the circumstances, the seizure of the dog did not violate appellant's Fourth Amendment

rights because it fell under one of the established exceptions to the warrant requirement.

{¶20}   Accordingly, appellant's sole assignment of error is overruled.

{¶21}   Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.