[Cite as *State v. Easter*, 2024-Ohio-1389.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-42 |
| | : | |
| v. | : | Trial Court Case No. 2022CR0393 |
| | : | |
| NATHAN A. EASTER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 12, 2024

. . . . . . . . . . .

ANTHONY C. SATARIANO and RONALD P. KELLER, Attorneys for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Nathan A. Easter appeals from his convictions for cruelty against a companion animal.   For the reasons set forth below, we affirm.

## I.      Factual and Procedural Background

{¶ 2} On August 11, 2022, Bellbrook Police Sergeant Gregory Williams and his

partner, Officer Stephanie Bennington, were dispatched to a residence on Barnett Drive on a report of a domestic violence incident. The victim reported that she and her husband (Easter) had been involved in a verbal altercation, that Easter had attempted to strangle her, and that Easter had shot the family dog and then strangled the dog with a zip tie and a leash. The victim left the home with her two small children and went to a nearby Sugarcreek Township Police Department.

{¶ 3} When the officers arrived at the home, they stationed themselves across the road from the house due to the concern that Easter was armed. As the officers were setting up a perimeter around the residence, Sgt. Williams heard a "wailing sound," which he believed to be coming from the family dog. The officers then used a loudspeaker system to urge Easter to exit the home. Easter ultimately exited the home and was arrested.

{¶ 4} Sgt. Williams asked Easter for permission to search the house. Easter denied the request; he stated that he wanted to hear what his wife said about whether the home could be searched. A little later, another officer again asked for permission to search the home, and Easter explicitly denied the request.

{¶ 5} The officers eventually sought and received permission to enter the home from Easter's wife. The officers entered the home and backyard and began to search for the dog. Officers observed a freshly dug hole in the backyard. They also found zip ties. After observing blood and fecal matter inside the home, Sgt. Williams instructed Off. Bennington to start an evidence log and to begin taking photographs of the scene. The officers ultimately located the dog, dead, outside of the backyard fence with a blue

leash wrapped around its neck.

{¶ 6} Easter was indicted on one count each of attempted felonious assault, disrupting public services, endangering children, abduction, unlawful possession of dangerous ordinance, and tampering with evidence and on two counts of cruelty against a companion animal. The counts of disrupting public services and unlawful possession of dangerous ordinance were later dismissed by the State.

{¶ 7} Easter filed a motion to suppress the evidence discovered during the officers' entry of the home and search of the surrounding premises. Following an evidentiary hearing, the trial court overruled the motion; it found that the officers had had the right to enter the premises under the exigent circumstances exception to the search warrant requirement.

{¶ 8} The matter proceeded to trial. On the second day of trial, the defense was provided with a copy of a videotape which contained statements made by Easter's wife during the time she was at the Sugarcreek Township Police Department. There is no dispute that the prosecutor did not have knowledge of the existence of the videotape until just prior to providing it to the defense. The record indicates that the parties and the trial court held discussions about the videotape, but some of these discussions are not a part of the record. On the third day of trial, defense counsel orally requested a mistrial due to the late receipt of the videotape. The court overruled the motion.

{¶ 9} The jury convicted Easter on both counts of cruelty against a companion animal and entered not guilty verdicts on the remaining counts. Easter was sentenced accordingly.

{¶ 10} Easter appeals.

## II.     Suppression

{¶ 11} Easter's first assignment of error states as follows:

THE TRIAL COURT IMPROPERLY APPLIED THE FACTS IN THE RECORD TO THE APPLICABLE LEGAL STANDARD IN DENYING DEFENDANT'S MOTION TO SUPPRESS ORIGINALLY FILED NOVEMBER 15TH, 2022 AND SUPPLEMENTED MARCH 21ST, 2023 IN SO MUCH AS THE TRIAL COURT INCORRECTLY DETERMINED AN EXIGENT CIRCUMSTANCE EXISTED ON THE NIGHT OF AUGUST 11, 2022, ELIMINATING LAW ENFORCEMENT'S NEED TO SECURE A WARRANT OR CONSENT BEFORE SEARCHING THE 2426 BARNETT DR., BELLBROOK, OHIO PROPERTY.

{¶ 12} Easter asserts the trial court erred in concluding that the police were permitted to enter the residence and its backyard due to exigent circumstances.

{¶ 13} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Searches conducted outside the judicial process, without a warrant, are per se unreasonable, subject to a few specifically established and well-delineated exceptions.   *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).   "The burden is on [the government to establish] an exemption from

the constitutional process * * *." *State v. Peterson*, 173 Ohio App.3d 575, 2007-Ohio-5667, 879 N.E.2d 806, ¶ 11 (2d Dist.).

{¶ 14} One such exception is exigent circumstances that reasonably allow the conclusion that emergency aid is needed. *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). The emergency-aid exception allows law enforcement officers to make a warrantless entry into a home or curtilage to render aid if they reasonably believe there is the immediate need for assistance to protect life or prevent serious injury. *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 20-22. The emergency aid exception applies where there is an objectively reasonable basis for believing that the subject is in need of immediate aid. *Brigham City, Utah v. Stuart,* 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

{¶ 15} Ohio courts, including this one, have extended the exigent circumstances exception to situations involving animal welfare. *State v. Glowney*, 2d Dist. Montgomery Nos. 27896 and Montgomery Nos. 27897, 2019-Ohio-3390, ¶ 38; *State v. Powell*, 2d Dist. Montgomery No. 27580, 2017-Ohio-8669, ¶ 30; *State v. Neanover*, 12th Dist. Butler No. CA2020-06-066, 2021-Ohio-540, ¶ 18; *State v. Kilburn*, 12th Dist. Warren No. CA96-12-130, 1998 WL 142412, *3-4 (Mar. 30, 1998).

{¶ 16} In this case, the evidence demonstrated that the officers had been advised that Easter shot the family dog. At the scene, the officers also heard noises which they believed to be made by the dog and which indicated to them that the dog was alive and in need of aid. As noted by the trial court, the footage from the officers' bodycam recordings supported the finding that the officers had entered the property to search for

the dog.

{¶ 17} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside* at ¶ 8, citing *Fanning* and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 18} Based upon the evidence presented, we conclude the trial court did not err in denying the motion to suppress. The search of the home and surrounding premises was reasonable because the officers believed an injured animal was on the premises and in need of aid. Accordingly, the first assignment of error is overruled.[1]

---

[1] We realize that the officers relied upon the wife's consent to enter the home and that, based upon Easter's refusal to consent to a search at the scene, the wife's consent was likely ineffective. *Georgia v. Randolph*, 547 U.S. 103, 120, 126, S.Ct. 1515, 164 L.Ed.2d 208 (2006). But irrespective of an officer's subjective belief, the analysis turns on an objective determination of whether the search was authorized by the Fourth Amendment. *State v. Lane*, 1st Dist. Hamilton No. C-230126, 2023-Ohio-4044, ¶ 11, citing *City of Dayton v. Erickson*, 76 Ohio St.3, 6, 665 N.E.2d 1091 (1996); *State v. Maddox*, 2021-Ohio-586, 168 N.E.3d 613, ¶ 16 (10th Dist.).

### III.     Mistrial

{¶ 19} Easter's second assignment of error provides as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT A MISTRIAL WHEN THE DEFENDANT WAS PROVIDED WITH A VIDEOTAPED INTERVIEW OF THE ALLEGED VICTIM FOR THE FIRST TIME DURING THE SECOND DAY OF THE JURY TRIAL.

{¶ 20} Easter asserts the trial court abused its discretion in denying his motion for a mistrial.

{¶ 21} Generally, the decision to grant or deny a motion for a mistrial rests in a trial court's sound discretion and should not be disturbed on appeal absent an abuse of that discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001).   To establish an abuse of discretion premised upon a failure to grant a mistrial, material prejudice must be demonstrated. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶ 22} Easter claims the videotape of the victim made while she was at the Sugarcreek Township Police Department contained exculpatory and impeachment evidence.   Thus, his motion for a mistrial was based upon the claim that the failure to provide the tape to him earlier constituted a violation of *Brady vs. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).   Easter argues that he was unable to effectively use the videotape during trial.   Specifically, he claims "[i]t would be impossible to effectively use a piece of evidence when it can't be referenced in opening statements or

used to cross examine or impeach numerous State witnesses." He further claims the late disclosure made "it impossible to fully and fairly formulate a defense strategy."

{¶ 23} *Brady* requires the government "to turn over evidence that is both favorable to the defendant and material to guilt or punishment." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 154. In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* at 87. However, no *Brady* violation occurs so long as the evidence is disclosed to a defendant in time for its effective use at trial. *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 36.

{¶ 24} In this case, the videotape was not marked or admitted into evidence as an exhibit. The content of the videotape also was not proffered into evidence during the discussions about the videotape and the requested mistrial. Thus, other than Easter's general assertions, we have no basis for concluding the tape contained impeachment or exculpatory evidence. In any event, defense counsel had the opportunity to study the videotape prior to conducting cross-examination of the victim. Further, the record contains no indication that the defense requested and/or was denied the right to re-cross-examination of any of the State's prior witnesses regarding the content of the videotape. Based upon this record, we cannot conclude that the videotape contained exculpatory or impeachment evidence. More importantly, we cannot conclude that Easter was prevented from effectively utilizing any such evidence. Therefore, we find that Easter

has failed to demonstrate a *Brady* violation and has failed to demonstrate that the trial court abused its discretion in denying his motion for a mistrial.

{¶ 25} The second assignment of error is overruled.

## IV. Conclusion

{¶ 26} Both of Easter's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.