[Cite as *State v. McCarthy*, 2022-Ohio-4738.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29468 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-4114 |
| | : | |
| WILLIAM J. MCCARTHY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHRISTIE M. BEBO, Atty. Reg. No. 0087294, Assistant Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, William J. McCarthy, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to one count of aggravated possession of drugs. In support of his appeal, McCarthy contends that the trial court erred by overruling his motion to suppress drug evidence that was seized from his vehicle. He claims that the drug evidence should have been suppressed because the investigating police officers unlawfully approached and opened his vehicle without a warrant in violation of his Fourth Amendment rights. According to McCarthy, the trial court erroneously determined that the officers had been authorized to approach and open his vehicle under the community caretaking/emergency-aid exception to the warrant requirement. McCarthy also claims that the drug evidence should have been suppressed because it was discovered as a result of the police officers' unlawfully seizing his person without a warrant. For the reasons outlined below, we disagree with McCarthy's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On January 13, 2022, a Montgomery County grand jury returned an indictment charging McCarthy with one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A), a felony of the third degree. The charge arose after a Dayton Police officer discovered McCarthy unconscious in the driver-seat of his vehicle while it was parked in an empty parking lot with its engine running. While the officer was attempting to shut off McCarthy's vehicle for safety purposes, the

officer observed the methamphetamine at issue in plain view on the vehicle's passenger-side floorboard.

{¶ 3} McCarthy pled not guilty to the indicted charge and filed a motion to suppress the drug evidence. In support of the motion, McCarthy argued that the drug evidence should be suppressed because it was discovered as the result of a warrantless search and seizure that violated his Fourth Amendment rights. On March 4, 2022, the trial court held a hearing on the motion. During the hearing, the State presented testimony from Officers Kenneth Webster and Jacob Savage of the Dayton Police Department. The State also presented video evidence that was taken from each of the officers' body and cruiser cameras during the incident in question. After reviewing the testimony and video evidence, the trial court made the following findings of fact on the record:

On December 17, [2021,] at approximately 2:19 a.m., Ofc. Kenneth Webster of the Dayton Police Department was in a marked cruiser wearing the uniform of the day[;] he was traveling alone. * * * He had been with the Dayton Police Department for approximately three years. He was in the area of Huffman Avenue and South Wright Avenue on patrol. He noticed a white van in the parking lot of what he described as the Buddhist temple. He noticed that [the vehicle] was running, the lights were on, and he thought that was suspicious. Particularly, he had seen that vehicle in the parking lot about 30 minutes before when he had been on patrol in the same area; he had seen it, [and the vehicle] was still there a half an hour later at approximately 2:19, and he indicated the engine on the vehicle was quite

loud. Because of that time of day, 2:19 a.m., it was the only vehicle in a lot where there was no activity[.] * * * [N]o services [were taking place] at the temple, nothing else [was] going on, and so [Ofc. Webster] made the decision to conduct a welfare check to see what was going on with that vehicle.

[Ofc. Webster] pulled into the lot[.] * * * [T]he officer can be seen actually on the body camera. He * * * pulled into a parking space, not necessarily opposite [McCarthy's vehicle] but he is clearly not blocking in [McCarthy], and there is sufficient room for [McCarthy] to get out there, as the whole driving area can be seen on the body camera.

Ofc. Webster did not activate his overhead lights. He knows the area to be a high drug activity area. He was concerned about a potential for an overdose, as he has had similar encounters of a similar nature [with] vehicles in parking lots, sitting in intersections, [and] sitting on the roadway. He waited for another officer to arrive; actually two other officers arrived. That was Jacob Savage and his partner, Ashley Fry. The concern was, based upon their experience, they saw a male slumped over in the driver seat. Ofc. Webster went to the passenger door. You can see—once the door is open, you can clearly see what ended up being [McCarthy] slumped over with his head down between the steering wheel and the driver side door.

It appeared to * * * Ofc. Webster that [McCarthy] did not appear to

be conscious. [McCarthy] was wearing baggy clothing and so [Ofc. Webster] could not tell if [McCarthy] was breathing. There was no motion. The windows were up. Again, [Ofc. Webster] is on * * * the passenger side. Ofc. Savage and Ofc. Fry were on the driver's side. Their concern was that the vehicle could be in drive, and particularly that the vehicle could enter the roadway, and so they made the decision to open the passenger's door [in an] attempt to turn the vehicle off so that * * * [McCarthy's] foot wouldn't go off the break * * * [.] The door was unlocked. As soon as they opened the door, Ofc. Webster observed a white bagg[ie] with a crystalline substance in it that he immediately recognized as being what he believed to be meth[.] [Ofc. Webster] is [specially] trained in drug detection. He's had numerous encounters with crystal meth, and he knows what it looks like, and he indicated that he comes into contact with it every week or two.

[Ofc. Webster] * * * did not touch [the drugs] immediately. [The officers] checked to make sure the vehicle was in park[.] [Ofc. Webster] attempted to remove the keys * * * to make certain that the car was not in gear and didn't go out into the roadway, but the ignition was apparently malfunctioning. You could also see as [Ofc. Webster is] opening the [passenger-side] door, * * * the other officers were on the other side * * * opening the [driver-side] door[.] [McCarthy] was very slow to react, and [the officers] attempt[ed] to check on him. So they remove[d] him [from the vehicle] and then they pat[ted] him down, and there was another baggie of

drugs in his pocket.

Plea Hearing Tr. (Mar. 23, 2022), p. 39-42.

{¶ 4} Based on the foregoing findings of fact, the trial court determined that the officers were engaged in a community caretaking function when they approached and opened McCarthy's vehicle to not only rouse McCarthy but to render his vehicle safe so that it would not go out of the parking lot and hurt anyone.  The trial court therefore concluded that, under the community caretaking/emergency-aid exception to the warrant requirement, the officers' conduct of approaching and opening McCarthy's vehicle without a warrant did not violate McCarthy's Fourth Amendment rights.  The trial court also determined that McCarthy had not been unlawfully seized by the officers.  Specifically, the trial court found that the officers' cruisers were not blocking McCarthy's vehicle so as to prevent him from leaving the area and that a reasonable person would not have believed that he or she was being detained by the officers.  Accordingly, the trial court overruled McCarthy's motion to suppress in its entirety.

{¶ 5} After the trial court overruled the motion to suppress, on March 23, 2022, McCarthy pled no contest to a reduced charge of aggravated possession of drugs as a fifth-degree felony.   The trial court accepted McCarthy's no contest plea, found him guilty of aggravated possession of drugs, and sentenced him to community control sanctions. McCarthy now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 6} McCarthy contends that the trial court erred by overruling his motion to

suppress the drug evidence seized from his vehicle. McCarthy claims that the drug evidence should have been suppressed because Officer Webster had no lawful basis to approach and open his vehicle without a warrant. In so arguing, McCarthy claims that the trial court erroneously determined that the community caretaking/emergency-aid exception to the Fourth Amendment warrant requirement authorized Officer Webster's actions. McCarthy also contends that his encounter with the officers constituted an unlawful, warrantless seizure of his person based on how many officers were present at the scene and based on how the officers parked their cruisers behind his vehicle, approached his vehicle from both sides, and illuminated his driver-side mirror with a spotlight. We disagree with all of McCarthy's claims.

*Standard of Review*

{¶ 7} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 8} After reviewing the entire record, we find that the trial court's findings of fact were supported by competent, credible evidence. Therefore, using those findings, we

will independently determine whether the trial court's decision to overrule McCarthy's motion to suppress was proper under the applicable legal standard.

*Community Caretaking/Emergency-Aid Exception*

{¶ 9} As previously discussed, McCarthy is challenging the trial court's application of the community caretaking/emergency-aid exception to the Fourth Amendment warrant requirement. Specifically, McCarthy argues that the facts of this case do not support finding that the officers had an objectively reasonable belief that immediate aid was required so as to permit the officers to approach and open his vehicle without a warrant.

{¶ 10} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution protect persons from unreasonable searches and seizures. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. Searches and seizures conducted without a warrant are per se unreasonable absent a few, well recognized exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181; *State v. Holloway*, 2d Dist. Clark No. 2004-CA-70, 2006-Ohio-4797, ¶ 16. "One such exception is the community caretaking/emergency-aid exception, which is grounded in interests of public safety." *State v. Glowney*, 2d Dist. Montgomery Nos. 27896 and 27897, 2019-Ohio-3390, ¶ 34, citing *Leak* at ¶ 20. (Other citation omitted.)

{¶ 11} Under the community-caretaking/emergency-aid exception, a law enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury may

conduct a community caretaking/emergency-aid stop. *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 26. "Community caretaking functions are 'divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *State v. Warnick*, 2d Dist. Miami No. 2019-CA-14, 2020-Ohio-4240, ¶ 21, quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "Accordingly, * * * police officers are not required to possess reasonable articulable suspicion of criminal activity when exercising community caretaking functions/emergency aid." (Citations omitted.) *State v. Klase*, 2019-Ohio-3392, 131 N.E.3d 1054, ¶ 17 (2d Dist.).

{¶ 12} For example, "law enforcement officers without reasonable suspicion of criminal activity may approach vehicles that they believe may need assistance as part of the officers' 'community caretaking functions.' " *State v. Hlinovsky*, 7th Dist. Belmont No. 09 BE 19, 2011-Ohio-6421, ¶ 60, citing *State v. Elliott*, 7th Dist. Columbiana No. 01 CO 53, 2002-Ohio-3018, ¶ 8-9. Such police-citizen interaction constitutes a consensual encounter that does not implicate Fourth Amendment protections. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Starcher*, 7th Dist. No. 13 JE 1, 2013-Ohio-5533, ¶ 22.

{¶ 13} "Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Therefore, "[a] consensual encounter can occur when a police

officer approaches and questions individuals in or near a parked car." (Citations omitted.) *State v. Schott*, 2d Dist. Darke No. 1415, 1997 WL 254141, *3 (May 16, 1997). *See also State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 20 (10th Dist.) ("when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts"); *State v. Windle*, 4th Dist. Athens No. 16 CA 1 2017-Ohio-7813, ¶ 30 ("officers could lawfully approach [defendant's] parked vehicle and knock on the window to rouse him without any specific justification because such contact is a consensual encounter that does not implicate the Fourth Amendment").

{¶ 14} We take this opportunity to stress that no objective justification is required for an officer to engage in a consensual encounter. *Bostick* at 434; *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). In the past, courts have issued opinions implying otherwise with regard to motorists parked in public places. *See, e.g., State v. Thayer*, 2d Dist. Clark No. 2667, 1990 WL 125704, (Aug. 31, 1990) (finding officers reasonably believed that a vehicle needed assistance given that the vehicle was sitting off the side of the road next to a cornfield, a place where cars are not normally stopped, between two and three in the morning); *State v. Pelsue*, 11th Dist. Portage No. 95-P-0149, 1997 WL 286174, *5 (May 23, 1997) (finding that an officer who observed a truck in the middle of the roadway at 1:39 a.m. with its engine running, bright lights shining, and turn signal flashing without moving for some time acted reasonably in investigating whether the truck was a disabled vehicle or stranded motorist); *State v.*

*Norman*, 136 Ohio App.3d 46, 54, 735 N.E.2d 953 (3d Dist.1999) (stating that "[w]hen approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base [his or] her safety concerns"). However, we wish to clarify that no objective justification is required for an officer to approach a motorist parked in a public place.

{¶ 15} In this case, because Officer Webster approached McCarthy's parked vehicle at a public place to see if McCarthy needed assistance, the approach was a consensual encounter that does not implicate Fourth Amendment protections. Therefore, contrary to McCarthy's claim otherwise, it was lawful for Officer Webster to approach McCarthy's vehicle.

{¶ 16} We also find that it was lawful for Officer Webster and the other responding officers to open McCarthy's vehicle without a warrant after seeing that McCarthy was unconscious and slumped over between the steering wheel and the driver-side door. "When an officer finds an unconscious, disoriented or injured person in a vehicle, it is reasonable for the officer to enter the vehicle to give aid and to determine the cause of the condition." *State v. Croston*, 4th Dist. Athens No. 01CA22, 2001 WL 1346130, *3 (Oct. 30, 2001), citing *LaFave*, Search and Seizure, 3rd Ed. § 7.4. Under those circumstances "officers [have] a right to open the vehicle's door to at least communicate with [the driver] about his condition." *State v. Hall*, 2017-Ohio-446, 84 N.E.3d 263, ¶ 8 (10th Dist.).

{¶ 17} In this case, the officers opened the doors to McCarthy's vehicle not only to see if McCarthy needed medical assistance for an overdose, but to confirm that the

vehicle was in park before rousing McCarthy so as to ensure that the vehicle did not go out of the parking lot and injure anyone. In other words, when the officers opened the vehicle for those purposes, they were acting under the community caretaking/emergency-aid exception to the warrant requirement. While carrying out that function, Officer Webster saw the methamphetamine inside McCarthy's vehicle in plain view. Because Officer Webster found the drugs while engaging in a community caretaking/emergency-aid function, the warrantless entry into the vehicle did not require suppression of the drug evidence.

*Seizure*

{¶ 18} McCarthy also claims that the drug evidence should have been suppressed because it was discovered as the result of the police officers' unlawfully seizing him during their initial approach of his vehicle.

{¶ 19} "A seizure occurs when, in view of all of the circumstances surrounding the incident, the police officer has either by physical force or a show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests and walk away or otherwise terminate the encounter." *State v. Belcher*, 2d Dist. Montgomery No. 24385, 2011-Ohio-5015, ¶ 22, citing *Mendenhall*, 446 U.S. 544 at 553, 100 S.Ct. 1870, 64 L.Ed.2d 497. "[W]hether a particular encounter involves a seizure is fact-specific[.]" *State v. Jones*, 2d Dist. Montgomery No. 29224, 2022-Ohio-149, ¶ 12. "Factors that might indicate a seizure include the threatening presence of several police officers, the display of a weapon, some physical touching of the person, the use of

language or tone of voice indicating that compliance with the officer's request might be required, approaching the person in a nonpublic place, and blocking the citizen's path." *Belcher* at ¶ 22.

**{¶ 20}** As previously discussed, McCarthy contends that his encounter with the police officers in this case constituted an unlawful, warrantless seizure based on how many officers were present at the scene and based on how the officers parked their cruisers behind his vehicle, approached his vehicle from both sides, and illuminated his driver-side mirror with a spotlight. In support of his argument, McCarthy points out that this court recently held in *Jones* that police officers demonstrated a show of authority that established a seizure when they positioned their cruiser in a way that made it difficult, though not impossible, for an individual to terminate the encounter and drive away. *Jones* at ¶ 14.

**{¶ 21}** Initially, we note that the video evidence in this case established that the officers' cruisers were not positioned in a way that made it difficult for McCarthy to back up and leave the scene. Regardless of that fact, we need not delve into all the factors that may or may not have established a seizure because McCarthy was unconscious at the time he claimed he was unlawfully seized. In *State v. Yeatts*, 2d Dist. Clark No. 2002-CA-45, 2002-Ohio-7285, this court explained that:

> The *Mendenhall* force or show of authority requirement implies that the officer's particular actions would have had an adverse effect on a reasonable person's calculus whether to decline the officer's request or to terminate the encounter. However, an unconscious subject is incapable of

exercising any such calculus at all. In that event, the officer's actions cannot function to impair the subject's freedom of movement or his exercise of his liberty interests. Absent that, no seizure occurs for purposes of the Fourth Amendment.

*Id.* at ¶ 18.

{¶ 22} In *Columbus v. Ridley*, 10th Dist. Franklin No. 13AP-1035, 2014-Ohio-4356, the Tenth District Court of Appeals applied our holding in *Yeatts* to a set of facts that were similar to the instant case and held the following:

As the officers approached appellant's car, appellant was passed out and slumped over the driver's seat. Because appellant was not capable of deciding whether he was free to leave, the officers' approach to his car cannot be considered a restraint of his personal liberty and, therefore, cannot be a seizure for Fourth Amendment purposes. *State v. Yeatts*, 2d Dist. No. 02CA45, 2002-Ohio-7285, ¶ 15-18 (seizure did not occur when officer approached unconscious defendant in car until defendant woke up). Without a seizure, appellant's Fourth Amendment rights were not implicated by the officers' conduct.

*Ridley* at ¶ 11.

{¶ 23} For the reasons discussed in *Yeatts* and *Ridley*, McCarthy's claim that he was unlawfully seized lacks merit because he was unconscious and incapable of deciding whether he was free to leave when the officers parked their cruisers behind his vehicle, approached his vehicle, and illuminated his vehicle with a spotlight. Because of this,

there was no seizure that implicated McCarthy's Fourth Amendment rights.

{¶ 24} For all the foregoing reasons, we find that the trial court did not err by overruling McCarthy's motion to suppress. Accordingly, McCarthy's sole assignment of error is overruled.

## Conclusion

{¶ 25} Having overruled McCarthy's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Christie M. Bebo
Hon. Mary Katherine Huffman