[Cite as *State v. Dehart*, 2024-Ohio-599.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00285 |
| | : | |
| MICHAEL S. DEHART | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 16, 2024

. . . . . . . . . . .

LUCAS W. WILDER, Attorney for Appellant

R. KELLY ORMSBY, III, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Michael S. Dehart appeals from his conviction on one count of aggravated drug possession, a fifth-degree felony.

{¶ 2} In his sole assignment of error, Dehart challenges the trial court's overruling of his motion to suppress methamphetamine found in his car. He contends two sheriff's deputies lacked reasonable, articulable suspicion of criminal activity to detain him in his

parked car and to inquire about his possession of contraband. He asserts that his consent to search the car was involuntary, as it was given during an illegal detention, and that methamphetamine found during the search should have been suppressed.

{¶ 3} We conclude that the deputies obtained permission to search the car during a consensual encounter and that the trial court correctly overruled Dehart's suppression motion. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} Following his indictment on one count of aggravated drug possession, Dehart moved to suppress the evidence. The matter proceeded to a December 19, 2022 suppression hearing. Darke County Sheriff's Deputy Steven Strunk was the only witness. Strunk testified that he saw Dehart's vehicle parked at a gas station in the early morning hours of November 11, 2022. Strunk and another deputy, William Toomey, approached the parked car to perform a welfare check on Dehart, who appeared to be asleep in the driver's seat. Strunk immediately recognized Dehart from prior interactions and knew that he had a suspended driver's license.

{¶ 5} Strunk knocked on the driver's side window and awakened Dehart. Strunk testified that Dehart responded by opening the car door. Strunk asked whether Dehart was okay, and Dehart responded affirmatively. The deputy also asked whether Dehart had been driving the car. Dehart stated that someone else had driven and had left him there. Strunk then asked whether Dehart was in possession of any weapons or contraband, and Dehart responded negatively. At that point, the deputy requested consent to search the car. Dehart granted Strunk consent to search and stepped out of

the car. Strunk found a baggie of methamphetamine in the center console. Upon finding the drugs, Strunk arrested Dehart. In addition to Strunk's testimony, the State admitted into evidence cruiser-camera recordings from two police cruisers.

{¶ 6} Following the hearing, the trial court overruled Dehart's suppression motion in a written decision. The trial court first determined that the two police cruisers did not block Dehart's vehicle. In fact, the trial court noted that Dehart's car was removed following his arrest without the need to reposition either cruiser. Based on its review of the cruiser-camera recordings, the trial court next found it "indeterminable" whether Strunk or Dehart had opened Dehart's car door. But even if Strunk opened the door, the trial court found that the welfare check allowed him to do so. With regard to Dehart's argument that Strunk lacked reasonable, articulable suspicion of criminal activity after confirming his welfare and his denial of driving, the trial court reasoned:

Defendant further argues that, after the welfare check was complete, the deputies had no reasonable, articulable suspicion of criminal activity. Again, the Court views the initial meeting of law enforcement and the Defendant as a consensual encounter. In less than one minute, Deputy Strunk introduced himself, inquired of the Defendant's status, obtained consent to search the vehicle, and was granted consent to search the Defendant's person. In fact, Defendant gave consent to search the vehicle and even offered to voluntarily get out of the car. Deputy Strunk then asked Defendant, "You ain't got nothing on you, right?" Defendant replies, "No," and subsequently consented to the search of his person. Once the consent

to search had been granted, Defendant's arguments become moot. And the Court does not find that law enforcement unreasonably detained Defendant before requesting and obtaining consent.

January 11, 2023 Judgment Entry at 4-5.

{¶ 7} Dehart subsequently pled no-contest in exchange for the State's agreement to recommend community control at sentencing. The trial court accepted the plea, made a finding of guilt, and sentenced Dehart to five years of community control.

## II. Analysis

{¶ 8} In his sole assignment of error, Dehart challenges the trial court's suppression ruling. Dehart maintains that he was "seized" for Fourth Amendment purposes when Strunk and Toomey positioned their cruisers in front of his car, leaving no room for him to pull away, and Strunk knocked on his side window. Dehart contends this seizure was unlawful as the deputies had no reason to believe he had committed or was about to commit any crime. Dehart also reasons that Strunk's questions about weapons or contraband in the car and his request to search were investigatory insofar as they were intended to confirm or dispel a mere "hunch" about illegal activity. Based on the premise that he was detained illegally, Dehart asserts that his consent to search was invalid, as it was tainted by and the product of illegal law-enforcement activity.

{¶ 9} When ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). As a result, when we review suppression

decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**{¶ 10}** The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution protect persons from unreasonable searches and seizures. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. Searches and seizures conducted without a warrant are per se unreasonable absent a few, well recognized exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181. One exception cited by the trial court in Dehart's case "is the community caretaking/emergency-aid exception, which is grounded in interests of public safety." *State v. Glowney*, 2d Dist. Montgomery Nos. 27896 and 27897, 2019-Ohio-3390, ¶ 34. A second exception is a consensual encounter, which occurs "when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶ 11}** With the foregoing legal principles in mind, we see no error in the trial court's overruling of Dehart's suppression motion. As for the trial court's factual findings, only two of them require discussion: the positioning of the deputies' cruisers and the opening of Dehart's car door. In support of his claim that he was unlawfully "seized," Dehart asserts

that the two deputies parked their cruisers in a way that "cornered" his vehicle and left him "without room" to drive away. The trial court rejected this claim, finding that the cruisers did not block Dehart's vehicle. The record supports the trial court's conclusion. The cruiser-camera recordings reflect that the deputies parked with their vehicles angled toward Dehart's car but some distance away from it. The trial court correctly noted that Dehart's car easily was removed from the scene without the need to reposition either cruiser. Therefore, even setting aside Dehart's lack of a driver's license, the cruiser-camera recordings confirm that the deputies did not block his vehicle or otherwise prevent him from leaving.

{¶ 12} As for the opening of Dehart's car door, the trial court found it "indeterminable from the video whether the driver's side door was opened by Deputy Strunk or the Defendant." Having closely studied the two cruiser-camera videos, we are convinced that one of them shows Dehart opening his own car door, which is consistent with Strunk's suppression-hearing testimony. When reviewed at one-quarter speed, the video recorded by Deputy Toomey's cruiser shows Deputy Strunk knocking on Dehart's driver's side car window. The deputy then waits as Dehart slowly leans forward and toward the door as if to open it. The door then opens, and the deputy's right hand can be seen resting on top of it. After reviewing this recording several times in slow motion, we are convinced that Dehart opened his own car door. Therefore, we reject the trial court's finding that the video evidence is "indeterminate" with regard to who opened the door. Both the video recording and Strunk's uncontroverted testimony constitute competent, credible evidence establishing that Dehart opened the door.

**{¶ 13}** It is beyond dispute that a law-enforcement officer may approach a person sleeping in a car and knock on the window. No justification is required because such contact is a consensual encounter. *State v. McCarthy*, 2022-Ohio-4738, 2003 N.E.3d 912, ¶ 13 (2d Dist.); *see also State v. Windle*, 4th Dist. Athens No. 16CA1, 2017-Ohio-7813, ¶ 27 (reasoning "that the officers could lawfully approach [the defendant's] parked vehicle and knock on the window to rouse him without any specific justification because such contact is a consensual encounter that does not implicate the Fourth Amendment"). In response to Strunk's knock, Dehart voluntarily opened his car door and conversed with the deputy. Strunk briefly asked whether Dehart was okay, whether he had been driving the car, whether he was in possession of any weapons or contraband, and whether he would consent to a search of the car. Dehart responded that he was fine, that he had not been driving, that he was not in possession of any weapons or contraband, and that Strunk could search the vehicle. Given that Dehart authorized the deputy to search the car during a consensual encounter, no Fourth Amendment violation occurred.

### III. Conclusion

**{¶ 14}** Dehart's assignment of error is overruled, and the judgment of the Darke County Common Pleas Court is affirmed.

. . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.