[Cite as *State v. Kiser*, 2026-Ohio-952.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30647 |
| Appellee | : | |
| | : | Trial Court Case No. 2021 CR 03999 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JESSE K. KISER | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 20, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and EPLEY, J., concur.

MONTGOMERY C.A. No. 30647

CHRISTOPHER BAZELEY, Attorney for Appellant
JONATHAN D. MURRAY, Attorney for Appellee

TUCKER, J.

{¶ 1} Jesse K. Kiser appeals from his conviction following a no contest plea to one count of aggravated drug possession.

{¶ 2} Kiser contends the trial court erred in overruling his motion to suppress methamphetamine found in his parked car. He argues that the community caretaking exception to the Fourth Amendment to the United States Constitution's search warrant requirement did not authorize a police officer to open his car door and see a container of methamphetamine on the passenger's seat.

{¶ 3} We conclude that the community caretaking exception did apply, the officer lawfully opened the car door and saw the drugs in plain view, and the trial court properly overruled the suppression motion. Accordingly, we affirm the trial court's judgment.

## I. Background

{¶ 4} A grand jury indicted Kiser on one count of aggravated drug possession, a fifth-degree felony, after a police officer discovered the methamphetamine in his parked car. Kiser moved to suppress the drugs. He argued that the officer's act of opening his car door, which enabled the officer to see the methamphetamine, violated the Fourth Amendment. The motion proceeded to an April 29, 2022 suppression hearing. The only witness was Edward Drayton, the patrol officer involved. After Officer Drayton's testimony, the trial court made the following factual findings on the record:

On April 25th, 2021, Ofc. Edward Drayton of the Kettering Police Department was in a marked cruiser wearing the uniform of the day, working the day shift. At that time, he had been with the Kettering Police Department for—well, he'd been there since October of 2000. He did have five years of prior service with other jurisdictions. He's had considerable training and experience.

At that day, the Kettering Police received a call, and he was dispatched to the AutoZone at 1551 East Dorothy Lane. Employees had called and asked that a suspicious vehicle be checked. The vehicle had been backed into a parking space at approximately 9 in the morning. At that time, it was 11:55 in the morning. The vehicle was running, it was described as a white BMW, and the employees of the AutoZone had indicated that no one had exited the vehicle during the approximately three hours that it had been parked in the lot and was running.

Officer Drayton parked his vehicle not near this vehicle, but in—he described it as an adjacent parking lot. He walked up to the passenger side of the BMW. Again, he did not block it in. He did not have his lights or sirens on his vehicle. He noticed that the vehicle had dark-tinted windows, and he could not see in. Again, the vehicle appeared to be the same white BMW backed in, and similar in description provided by the AutoZone employees. When he got closer to the vehicle, he could tell that it was running. The windows were down about two inches with the keys in the ignition. As he not only approached the vehicle but was standing looking in to see what was going on, the driver did not acknowledge his presence or rouse in any way. He went from the

3

passenger side of the vehicle over to the driver's side again, just to see if he could see what was going on and didn't observe anything more, other than that—again, going to the driver's side—the driver continued not to rouse up.

He went back to the passenger side, and he was obviously concerned for whether the occupant needed assistance. He tried to open the passenger door, which was unlocked, and he opened it. Immediately upon opening the door, he observed items all over the vehicle, including a razor blade and a hatchet on the passenger floor. Even after he opened the door, the driver again did not rouse or become alert. He was concerned again for safety that the Defendant might—well, the driver, he didn't know who it was at that time—might take off.

So he attempted to turn the ignition off. He had prior similar experiences, and again, was concerned for safety purposes and concerned about whether the driver was suffering a medical emergency or otherwise. He did not know if the person had a medical issue when he opened the door, but again, he was concerned because of the circumstances. And again, I want to point out that he specifically indicated—this is Ofc. Drayton—that the occupant did not alert, not only when he walked around the vehicle but also when he opened the door. He identified himself.

As the driver began to rouse, he observed a clear, round container. Based upon his training and experience, he believed [it] contained crystal meth, as well as a butane lighter. He could not see the container when he looked through the windows but observed it when he opened the door and was attempting to rouse the driver. He could see—I do want to note for the record—

4

that the driver was breathing, but again, was very concerned about the fact that the driver did not rouse in any manner.

June 8, 2022 Tr. 35-37.

**{¶ 5}** Based on the foregoing facts, the trial court held that the community caretaking exception to the Fourth Amendment allowed Officer Drayton to open the car door and observe the methamphetamine. In support of this legal conclusion, the trial court reasoned:

> The Court does find that Officer Drayton possessed objectively reasonable grounds to believe that there was an immediate need for assistance and therefore justifying his opening the car door. The employees of AutoZone had indicated that the vehicle had been in the parking space since approximately 9:00—so almost three hours—and was running, and that no one had exited.
>
> When the officer approached the vehicle, even though there were dark-tinted windows, he could see through what he described as cracks of about two inches on both sides, and that he could see a person in the vehicle who appeared to be breathing, but who did not rouse when he approached the vehicle on both sides: so, he went to the passenger side, driver's side, back to the passenger side, still had not roused and did not rouse even when he opened the door. And this was prior to the time he saw what he believed, based upon his training and experience, to be crystal meth.
>
> And so I am going to overrule the motion, finding that the officer had reasonable grounds for the very limited intrusion, and he was in a place he lawfully could be. Based upon the community caretaker function, when he

5

observed in plain view what he described as crystal meth, and I'm going to

overrule the motion based thereon.

*Id*. at 38-39.

{¶ 6} After the suppression ruling, Kiser pled no contest as charged. The trial court found him guilty and imposed five years of community control sanctions. This appeal followed.

## II. Analysis

{¶ 7} The sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT OVERRULED KISER'S MOTION TO

SUPPRESS.

{¶ 8} Kiser disputes the applicability of the community caretaking exception to the Fourth Amendment. He argues that Officer Drayton opened the car door to search for evidence of a crime, not in response to a perceived emergency. Kiser points out that Drayton parked in an adjacent lot to conceal his approach, suggesting that Drayton's purpose was to uncover criminal activity rather than to render aid. Kiser also asserts that Drayton could have checked on his welfare through a less-intrusive means by knocking on a window rather than opening a door. Kiser notes that Drayton admitted opening the door to see "what was going on inside the car" and removing the keys to prevent Kiser from driving away. Finally, Kiser contends the officer performed no medical evaluation after opening the door, instead inquiring about the methamphetamine and weapons. Under these circumstances, Kiser claims the trial court erred in finding the community caretaking exception applicable and overruling his suppression motion on that basis.

{¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact

6

and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id*.

{¶ 10} Here the trial court's factual findings quoted above were supported by competent, credible evidence in the form of Officer Drayton's testimony. Accepting those findings, and without deference to the trial court's legal conclusion, we believe the trial court correctly found the community caretaking exception to the Fourth Amendment applicable.

{¶ 11} The Fourth Amendment generally prohibits searches conducted without a warrant, which are per se unreasonable absent a recognized exception. (Citations omitted.) *State v. McCarthy*, 2022-Ohio-4738, ¶ 10 (2d Dist.). One exception is the community caretaking or emergency-aid exception, which is rooted in public safety. (Citations omitted.) *Id*. "Under the community-caretaking/emergency-aid exception, a law enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury may conduct a community caretaking/emergency-aid stop." *Id*. at ¶ 11, citing *State v. Dunn*, 2012-Ohio-1008, ¶ 26. "Community caretaking functions are 'divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *State v. Warnick*, 2020-Ohio-4240, ¶ 21 (2d Dist.), quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). For that reason, "police officers are not required to possess reasonable articulable suspicion of criminal activity when exercising community caretaking functions/emergency aid." (Citations omitted.) *State v. Klase*, 2019-Ohio-3392, ¶ 17 (2d Dist.).

{¶ 12} Officer Drayton needed no justification to approach Kiser's parked car and look in the windows. *McCarthy* at ¶ 14. Upon doing so, he observed Kiser unconscious or asleep in the driver's seat. Drayton knew that Kiser's vehicle had been parked for about three hours that morning with the engine running. AutoZone's employees had not seen anyone exit the vehicle. These circumstances gave Drayton objectively reasonable grounds to believe that there was an immediate need for his assistance to prevent serious injury to Kiser. Drayton needed no probable cause or even articulable suspicion of criminal activity to determine whether Kiser required care for a possible overdose, stroke, or other disabling condition.

{¶ 13} The fact that Officer Drayton parked in an adjacent lot fails to persuade us otherwise. Drayton approached on foot to conceal himself for "officer safety." Considering the limited information available to him and his uncertainty about what Kiser was doing, he was entitled to look after his own safety while checking on Kiser's welfare.

{¶ 14} We also are unconvinced that Officer Drayton was required to knock on Kiser's window before opening the door. Drayton possessed objectively reasonable grounds to believe that Kiser might need assistance for a medical emergency. That being so, the officer was entitled to open the car door to assess Kiser's condition. Kiser cites no authority for the proposition that Drayton was required to use a "less intrusive" method such as knocking on the window. We note too that Drayton immediately removed the car keys from the ignition upon opening the door. He did so based on his knowledge that sleeping or unconscious drivers sometimes reflexively react to being awakened by immediately trying to drive away. Given Drayton's uncertainty about Kiser's medical condition, we believe he reasonably wanted to prevent that potentially dangerous situation, which he could not have done by merely knocking on the window to rouse Kiser.

8

{¶ 15} Kiser also cites Officer Drayton's cross-examination testimony about wanting to "see more of what was going on inside the car" when he opened the door. Kiser claims this explanation suggests an intent to conduct an unlawful search. Earlier in his testimony, however, Drayton provided a more complete explanation of his reason for opening the door. He stated:

Well, at that point in time, I wasn't quite sure what I had here. I didn't know if I had, you know, a person that was passed out, or if there was somebody that needed medical attention because he hadn't woken up at that point in time. And so that's why I opened up the door at that point in time then, also to see if I could see anything else as far as that was readily accessible to him if I'm going to end up waking him up.

April 29, 2022 Tr.12.

{¶ 16} This fuller explanation suggests that Officer Drayton opened the door to perform a community caretaking function while also looking out for his own safety. Even Drayton's later testimony about opening the door to "see more of what was going on inside the car" was consistent with community caretaking. Based on his knowledge when he decided to open the door, what was "going on" inside the car could have been a drug overdose or other medical emergency needing an immediate response.

{¶ 17} Finally, Kiser contends Officer Drayton did not engage in any medical evaluation or provide any treatment, suggesting the absence of a community caretaking function. After being roused, however, Kiser was able to identify himself and to converse with the officer. By that point, Drayton already had opened the car door, exposing the methamphetamine to plain view. The fact that Kiser ultimately may not have needed

emergency care does not mean Drayton lacked objectively reasonable grounds to believe that there was an immediate need for assistance when he opened the door.

{¶ 18} In opposition to our conclusion, Kiser cites *State v. Windle*, 2017-Ohio-7813 (4th Dist.). He relies on *Windle* for the proposition that the community caretaking exception does not apply when an officer sees a person appearing to be asleep in a legally parked car. In *Windle*, the Fourth District found the exception inapplicable where the defendant, who was "visibly breathing," had been sitting in his car in a gas station parking lot for about an hour. The Fourth District reached this conclusion even though a gas station employee expressed concern that the defendant "appeared to be 'pale almost ashen, . . . diaphoretic, and did not look conscious." *Id*. at ¶ 6. The employee reported that the defendant was sweating, flushed, and did not appear well. *Id*. at ¶ 8. An officer then observed the defendant "slouched over" in the driver's seat with the windshield wipers operating on a sunny day. Despite finding the community caretaking exception inapplicable, *see id*. at ¶ 29, the Fourth District held that the initial encounter was consensual and that the officer developed reasonable, articulable suspicion to believe the defendant was under the influence of something, justifying continued detention and later an arrest. *Id*. at ¶ 35.

{¶ 19} In our view, *Windle* appears to have involved an unreasonably rigid application of the community caretaking exception. In finding the exception inapplicable, the Fourth District stressed that the defendant's car was "legally parked" at the gas station, an officer saw the defendant "breathing," and the officer waited for back-up to arrive and formulated a "strategy" before approaching the car. Of course, the fact that the defendant's car had been legally parked for about an hour did not preclude the existence of a medical emergency, and the fact that the defendant was breathing established only that he was not dead. We also see no reason why the officers in *Windle* could not briefly consider their own safety before

approaching the defendant's vehicle. Regardless, like most Fourth Amendment issues, cases involving the community caretaking exception necessarily are fact specific. On the record before us, we conclude that Officer Drayton was entitled to open Kiser's car door to check on his welfare after seeing him unconscious or asleep in the driver's seat and after being informed that his vehicle had been parked for about three hours with the engine running. Therefore, the trial court properly overruled Kiser's suppression motion. The assignment of error is overruled.

### III. Conclusion

{¶ 20} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and EPLEY, J., concur.

11